2013-1189

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

W.Y INDUSTRIES , INC.,

Plaintiff-Appellee,

v.

KARI-OUT CLUB, LLC, formerly known as Kari-Out Klub LLC,
doing business as Kari-Out Company,
PERK-UP, INC. also known as Kari-Out Inc.,
and TRIPAK INDUSTRIAL USA, LLC,

Defendants-Appellants,

and

JOHN DOES NUMBER 1-10,
and ABC COMPANIES NUMBER 1-10,

Defendants.

Appeal from the United States District Court for the District of New Jersey in
Case no. 08-CV-5349, Judge Susan D. Wigenton.

## BRIEF OF BEHALF OF PLAINTIFF-APPELLEE W.Y. INDUSTRIES, INC.

Dennis F. Gleason
JARDIM, MEISNER & SUSSER,
P.C.
30B Vreeland Road, Suite 201
Florham Park, NJ 07932
(973) 845-7640

*Attorneys for Appellee*
*W.Y. Industries, Inc.*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 27(a)(7) and 47(a), counsel for Appellee W.Y. Industries, Inc. certifies:

1.    The full name of every party or amicus represented by me is:

   W.Y. Industries, Inc.

2.    The name of the real party in interest represented by me is:

   W.Y. Industries, Inc.

3.    All parent corporations and any publicly held companies that own ten percent or more of the stock of the par or amicus represented by me:

   None

4.    The name of all law firms and the partners and associates that appeared fo the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

   Jardim, Meisner & Susser, P.C.; Carella Byrne Cecchi Olstein Brody & Agnello; Dennis Gleason; Kenneth L. Winters

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUES PRESENTED FOR
REVIEW        ........................................................................................ 2

STATEMENT OF THE CASE ................................................................ 3

STATEMENT OF FACTS ...................................................................... 4

SUMMARY OF ARGUMENT ............................................................... 10

ARGUMENT ...................................................................................... 12

POINT I

BECAUSE NO AMENDED NOTICE OF APPEAL HAS
BEEN FILED, THE ISSUES FOR REVIEW
ON APPEAL ARE LIMITED TO WHETHER JUDGMENT OF
LIABILITY AND MONEY DAMAGES AS TO DEFENDANT
KARI-OUT ONLY SHOULD BE AFFIRMED ........................................... 12

    A.    This Court Only Considers Orders Or Judgments
          Timely Appealed From ................................................................ 13

    B.    The Kari-Out Defendants Have Not Filed An
          Amended Notice Of Appeal .......................................................... 14

POINT II

SUFFICIENT EVIDENCE WAS PRESENTED BY W.Y. TO ALLOW
THE JURY TO FIND INFRINGEMENT BY THE
KARI-OUT DEFENDANTS ................................................................... 15

POINT III

UNDER THE CIRCUMSTANCES OF THE CASE,
THE PROTOCOL FOR ESTABLISHING A
REASONABLE ROYALTY WAS FAITHFULLY FOLLOWED

UNDER THE CIRCUMSTANCES OF THE CASE,
THE PROTOCOL FOR ESTABLISHING A
REASONABLE ROYALTY WAS FAITHFULLY FOLLOWED ............. 20

A.  The Analysis Under The *Georgia-Pacific* Factors ................................. 21

B.  Adjustments Based On The Factors. ....................................................... 24

C.  While Criticizing The Approach Of W.Y.,
    The Kari-Out Defendants Offered No Alternative
    Analysis Of A Reasonable Royalty ....................................................... 29

D.  Should This Court Conclude That The Reasonable
    Royalty Was Not Properly Assessed, Remand
    And Not Dismissal Of The Damage Claim Is Appropriate .................... 30

POINT IV

THE DISTRICT COURT CORRECTLY
FOUND THAT W.Y. HAD DEMONSTRATED THE
REQUIREMENTS  ENTITLING IT TO INJUNCTIVE RELIEF

THE DISTRICT COURT CORRECTLY
FOUND THAT W.Y. HAD DEMONSTRATED THE
REQUIREMENTS  ENTITLING IT TO INJUNCTIVE RELIEF ............... 32

A.    The Irreparable Injury To W.Y. ......................................................... 33

      1.    The elephant in the room ......................................................... 33

      2.    W.Y. and the Kari-Out defendants are competitors ............... 35

      3.    The marketing strategy of Kari-Out to give away
            containers with the purchase of other Kari-Out products
            allows the Kari-Out defendants to profit without
            sales of the infringing containers ........................................... 36

      4.    The nexus between the irreparable harm and infringement ..... 36

B.    Inadequacy Of Money Damages ......................................................... 40

C.    Balancing Of The Hardships..................................................... 40

D.    Public Interest ........................................................................ 42

E.    Should This Court Conclude District Court Has Not
Sufficiently Articulated The Basis For The Permanent Injunction,
The Matter Should Be Remanded For Further Consideration............ 43

CONCLUSION ........................................................................... 45

# TABLE OF AUTHORITIES

*Abbott Labs v. Andrx Pharms. Inc.*,
    452 F. 3d 1331 (Fed. Cir. 2006) ....................................................... 42

*Abbott Labs v. Sandoz Inc.*,
    544 F. 3d 1341 (Fed. Cir. 2008) ....................................................... 42

*Acumed LLC v. Stryker, Inc.*,
    551 F. 3d 1323 (Fed. Cir. 2008) ....................................................... 42

*Amini Innovation Corp. v. Anthony California, Inc.*,
    439 F. 3d 1365 (Fed. Cir. 2006) ....................................................... 18

*Apple Inc. v. Samsung Electronics, Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012) ................................................. 38, 39

*Bandag, Inc. v. Gerard Tire Co.*,
    704 F.2d 1578 (Fed. Cir. 1983) ....................................................... 30

*Braun Inc. v. Dynamics Corporation of America*,
    975 F.2d 815 (Fed. Cir. 1992) ................................................... 17, 18

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1306 (Fed. Cir. 2010) ....................................................... 18

*Douglas Dynamics v. Buyers Products Co.*,
    2013 WL 2158423 (Fed. Cir. May 21, 2013)............................... 35, 43

*Dow Chemical Co. v. MEE Industries*,
    341 F.3d 1370 (Fed. Cir. 2003) ....................................................... 31

*eBay v. MercExchange, LLC*,
    547 U.S. 388 (2006) ...................................................................... 34

*Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*,
    768 F. Supp. 2d 872 (E.D.Va. 2011) ................................................ 42

iv

*Georgia-Pacific v. Plywood Corp.*,
      318 F. Supp. 116 (S.D.N.Y. 1970) .................................. 11, 20, 21, 26

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
      162 F.3d 1113 (Fed. Cir. 1998) ....................................... 18

*i4i Ltd. P'ship. v. Microsoft Corp.*,
      598 F. 3d 831 (Fed. Cir. 2010) ......................................... 35

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
      274 F.3d 1371 (Fed. Cir. 2001) ....................................... 20

*Kewanee Oil Co. v. Bicron Corp.*,
      416 U.S. 470 (1974) ....................................................... 42

*Lucent Technologies, Inc. v. Gateway, Inc.*,
      580 F.3d 1301 (Fed. Cir. 2009) ............................... 25, 26, 29

*MEHL/BIOPHILE International Corp. v. Milgram*,
      192 F.3d 1362 (Fed. Cir. 1999) ....................................... 40

*MGM Well Servs. Inc. v. Mega Lift Sys. LLC*,
      505 F. Supp. 2d 359 (S.D.Tex. 2007) .............................. 42

*Mpt Inc. v. Marathon Labels*,
      505 F. Supp. 2d 401 (N.D. Ohio 2007), affirmed in part,
      reversed in part, 258 Fed. Appx. 318 (Fed. Cir. 2007) ...... 41

*National Pesto Industries, Inc. v. West Bend Company*,
      76 F.3d 1185 (Fed. Cir.1996) ......................................... 19

*Reebock Int'l. Ltd. v. J. Baker, Inc.*,
      32 F. 3d 1552, 1557 (Fed. Cir. 1994) .............................. 37

*Resqnet Com. Inc. v. Lansa, Inc.*,
      594 F.3d 860 (Fed. Cir. 2010) ................................... 26, 26

*Robert Bosch LLC v. Pylon Manufacturing, Corp.*,
      659 F.3d 1142 (Fed. Cir. 2011) ....................................... 34

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
   466 F. Supp. 2d 978 (W.D. Tenn. 2006) ........................................... 35

*Unilock v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) ............................................. 26, 26, 27

*Windsurfing International, Inc. v. AMF, Inc.,*
   *782 F.2d 995 (Fed. Cir. 1996)*........................................................ 42

## Cases and Other Authorities

Fed. R. Civ. P. 59 ...................................................................... 13

F.R.A.P. 4   ............................................................................... 13

35 U.S.C. §284 ........................................................................ 31

35 U.S.C. §289 ........................................................................ 18

# JURISDICTIONAL STATEMENT

W.Y. Industries, Inc. ("W.Y.") concurs with the jurisdictional statement of defendants, except to note: The final judgment entered by the district court on December 11, 2012, awarded damages against defendant "Kari-Out Club, LLC" only. (A1.) The notice of appeal addressed only the relief in the final judgment "entered on December 11, 2012." (A683.) In response to W.Y.'s motion to amend the final judgment, the district court (a) awarded damages against all three defendants: Kari-Out, LLC ("Kari-Out"), Perk-Up, Inc. ("Perk-Up") and Tripak Industrial USA, LLC, ("Tripak Industrial") (collectively "the Kari-Out defendants");  and (b) granted injunctive relief against the Kari-Out defendants. (A2-3.) None of the Kari-Out defendants filed an amended notice of appeal.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    As an initial matter, should this Court consider the appeal of defendants Perk-Up and Tripak Industrial where they were not subject to the final judgment and no amended notice of appeal has been filed from the amended final judgment?

2.    As an initial matter, should this Court consider the appeal of defendant Kari-Out with regard to the issuance of injunctive relief where no amended notice of appeal has been filed as to the amended final judgment?

## STATEMENT OF THE CASE

W.Y supplements the statement of the case of the Kari-Out defendants as follows:

As part of W.Y.'s motion for partial summary judgment, the district court dismissed the counterclaim of patent mismarking by the Kari-Out defendants and the Kari-Out defendants abandoned their counterclaim that the patent was invalid as anticipated. (A13; A24 and A26.)

At the conclusion of Kari-Out defendants' case in chief, W.Y. moved for a directed verdict as to the defense and counterclaim of invalidity for obviousness.   The Kari-Out defendants abandoned that claim as well, leaving the validity of the patent unchallenged.  (A998.)

The amended final judgment was entered March 21, 2013.  (A2-3.)

No amended notice of appeal has ever been filed.

## STATEMENT OF FACTS

W.Y. supplements the statement of facts of the Kari-Out defendants as follows:

In about 2000, W.Y set out to design a rectangular container. This design was intended to follow the style of the highly successful round container created and sold by W.Y. in the 1990s. (A825-28.)

After finalizing the design, W.Y. applied for and was granted U.S. Pat. D469, 689 ("the '689 patent"). and that W.Y. manufactured and sold containers with the patented design. (A829; A838.) Two perspectives of the container follow.



(A1149.)



(A1148.)

In 2007, the Kari-Out defendants, who had never previously designed or manufactured containers, made plans to manufacture and sell two styles of containers: a round and a rectangular shape, similar to the aluminum trays already in the marketplace.  (A950.) (A955-56; A977 A987-89.)  Later, the Kari-Out defendants expanded those plans to include a rectangular container, the same style as the W.Y rectangular container. (A952.)  The Kari-Out defendants referred to this style as an oblong container.  Two perspectives of the container follow.



(A1150.)



(A1154.)

In designing the oblong containers, the Kari-Out defendants obtained the W.Y. patent and the W.Y. container as part of the design process. (A952.)

In 2008, Bill Cheng, one of the owners of W.Y., and a named inventor, related that a customer showed him a container which looked to have the same design as the W.Y. design. Upon a very close inspection Cheng saw that it was not a W.Y. container, but a container that was marked with the name Tripak. (A873-74.)

A further inspection of that container was conducted at the offices of W.Y. The sameness in design of the Kari-Out defendants' container to the W.Y. design was confirmed when W.Y. was able to easily snap the lid of Kari-Out container on to the W.Y. container, and vice versa. (A844-45.) Indeed, even the president of the Kari-Out defendants calls it a "close cousin." (A995-96.)

Shortly after the December 2012 verdict, W.Y. wrote to the Kari-Out defendants demanding that, in light of the jury's verdict of infringement, the Kari-Out defendants cease the continued manufacture, offer for sale and sale of the infringing containers would be considered that willful infringement. (A625.) In response, the Kari-Out defendants noted that they did not

consider the post-verdict manufacturing and sales as willful infringement. (A627.)

Despite verdict and the demand to cease selling the infringing containers, the Kari-Out defendants continued to advertise and sell the infringing containers until entry of a permanent injunction. (See A629-74.)

## SUMMARY OF ARGUMENT

This Court need not consider the appeal argued by defendants Perk-Up and Tripak Industrial. When the notice of appeal was filed, they were not named in the final judgment and therefore had nothing to appeal from. Only after entry of the amended final judgment could they appeal. However, no amended notice of appeal has ever been filed -- by any party.

In a similar vein, this Court need not consider the appeal of Kari-Out directed to the permanent injunction. Unlike the other two defendants, the final judgment did name Kari-Out and therefore the notice of appeal filed before W.Y.'s Rule 59 motion, could be deemed to be timely filed. The final judgment, however, was limited to money damages; it was the amended final judgment that granted the permanent injunction but no amended notice of appeal was filed.

To the extent that this Court considers the full merit arguments, they may be given short shrift as well.

With regard to proving infringement, the evidence submitted by W.Y. at trial exceeds the threshold to overcome judgment as a matter of law in favor of the Kari-Out defendants. The jury had available to it, among other things, the suit patent, W.Y.'s embodiment of that design patent and the infringing container of the Kari-Out defendants. This together with other

evidence provided the jury with a sufficient basis to find that the container of the Kari-Out defendants infringes the design patent of W.Y.

As to damages in the way of a reasonable royalty, the challenge by the Kari-Out defendants appears to be grounded in the data used by the damage expert. W.Y.'s expert explained to the jury what he used to arrive at a base royalty and then explained each of the *Georgia-Pacific* factors, and how he weighed each of the relevant factors and applied them to the base as appropriate to arrive at a reasonable royalty of .003 cents per container.

Lastly, assuming that the Court will consider the merits of the challenge to the permanent injunction, the Kari-Out defendants contend, in the main, that W.Y. did not offer and the district court did not find that there was irreparably injury or a nexus between the harm and infringement. The district judge correctly exercised her discretion in granting the injunction, including the fact that notwithstanding a jury verdict of infringement, the Kari-Out defendants continued to advertise and sell their containers.

# ARGUMENT

## POINT I

### BECAUSE NO AMENDED NOTICE OF APPEAL HAS BEEN FILED, THE ISSUES FOR REVIEW ON APPEAL ARE LIMITED TO WHETHER JUDGMENT OF LIABILITY AND MONEY DAMAGES AS TO DEFENDANT KARI-OUT ONLY SHOULD BE AFFIRMED

As a threshold matter, this Court should consider whether all the parties and the issues of the appeal are properly before the Court.

This Court is vested with the authority to consider appeals from district courts, for only those subject areas set forth by law and where the appeal is timely filed. The Court, here, need not address the merits of arguments relating to the amended final judgment as those have not been appealed from.

For whatever reason, following the entry of the amended final judgment, the Kari-Out defendants did not file any amended notice of appeal. Consequently, this Court need only address the issues of infringement and reasonable royalty as they apply to Kari-Out as noted in the final judgment. The Court lacks jurisdiction to consider arguments of the remaining defendants and the permanent injunction.

**A.    This Court Only Considers Orders Or Judgments Timely Appealed From**

Federal Rule of Appellate Procedure 4(a) charts the process for appealing as of right in a civil action.

Of particular importance in this appeal is that portion of the appellate rule that speaks to the effect of a motion under Fed. R. Civ. P. 59.  See F.R.A.P. 4(a)(4).

More specifically, Rule 4(a)(4)(B)(ii), reads in relevant part: "A party intending to challenge an order disposing of any motion [such as Fed. R. Civ. P. 59] or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal" within 30 days of entry of the order disposing of the motion.

In other words, "the Rules of Appellate Procedure clearly mandate an amended notice of appeal" where the challenge on appeal is impacted by the amended judgment.    *Union Pacific R.R. v. Greentree Transportation Trucking Co.*, 293 F.3d 120, 126 and n. 8 (3d Cir. 2002)(applying regional circuit law).

**B.    The Kari-Out Defendants Have Not Filed An Amended Notice Of
Appeal**

Both Perk-Up and Tripak were not named in the final judgment. (A1.)
Consequently, they cannot ask for this Court's assistance to vacate a
judgment that does not include them.

So too, none of the Kari-Out defendants can avail themselves of this
Court's jurisdiction to consider an appeal with regard to the amended final
judgment because no amended notice of appeal has been filed.

In short, the only issue that this Court need to address is whether the
district court erred in denying the judgment as a matter of law as to Kari-Out
only.

## POINT II

### SUFFICIENT EVIDENCE WAS PRESENTED BY W.Y. TO ALLOW THE JURY TO FIND INFRINGEMENT BY THE KARI-OUT DEFENDANTS

From the perspective of an ordinary observer familiar with the prior art, the jury found that the overall visual effect of the Kari-Out defendants'[1] container is significantly the same as the W.Y. patented design. This is the standard under *Gorham v. White*, 81 U.S. 511 (1872). In the face of the jury's verdict, the Kari-Out defendants challenge, as matter of law, whether sufficient evidence was adduced at trial to support that verdict.

A denial of a motion for judgment as a matter of law will be reversed "only when there is a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where there is such an overwhelming amount of evidence in favor of the moving party that fair minded jurors could not reasonably arrive at a verdict against the movant." *SR Int'l Bus. Co. v. World Trade Ctr. Pros., LLC*, 467 F.3d 107, 118-19 (2d, Cir. 2006).

The question in this appeal is whether W.Y. provided "a legally sufficient evidentiary basis" *i.e.*, substantial evidence. *Agrizap Inc. v.*

---

[1] Although W.Y. submits that only Kari-Out has correctly appealed, the arguments below are directed collectively to the Kari-Out defendants.

*Woodstream*, 520 F.3d 1337, 1342 (Fed. Cir. 2008). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 859 (Fed. Cir. 1991)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The evidence submitted to the jury included:

The '689 patent (A532-39); the W.Y. container which is an embodiment of the patented design (A1145-49); the infringing container of the Kari-Out defendants. (A1150-54); testimony of Brian Buchalski, one of the named inventors, describing the design features of the '689 patent and his conclusions after examining the Kari-Out container that the infringing container is the same design as W.Y. (See generally A839-45;A850-52); the testimony of W.Y.'s expert that the design found in the '689 patent is unique and different from all the prior art with which he familiar, in part, because of smooth curves in contrast to other rectangular containers that have sharper angles approaching 90 degrees  (A883-85); and the charge given by the district judge as to the claim construction, i.e., the ornamental features of the '689 patent. (A1015-16.)

An additional nail in the coffin on sameness of design is the admission by the president of the Kari-Out defendants that the lid of the Kari-Out

container is a "close cousin fit" to the W.Y. container base. He went on to apologize that it is unfortunate that the lids and bases of the W.Y. and Kari-Out containers are interchangeable. (A995-96.)

Notwithstanding that body of evidence, the Kari-Out defendants challenge that there was sufficient evidence presented to the jury to demonstrate infringement of the '689 patent. The rub is that there are differences between the suit patent and the Kari-Out container which mandate a finding of non-infringement.

The Kari-Out defendants press that the only evidence submitted to the jury was the '689 patent, the infringing Kari-Out container, the W.Y. container (which is an embodiment of the suit patent) and that W.Y. presented no testimony comparing '689 patent to the Kari-Out container. (Kari-Out br. at pp. 14-18.)

First, accepting *arguendo* that the only evidence presented was the '689 patent, the W.Y. container, and the infringing Kari-Out container, that would likely be sufficient. "Nothing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design and the accused device's design." *Braun Inc. v. Dynamics Corporation of America*, 975 F. 2d 815,

17

821 (Fed. Cir. 1992). This is especially true here where the trial court had provided the jury with a claim construction as to the ornamental, nonfunctional features which served as a basis to determine infringement.

Apart from that, the Kari-Out defendants appear to maintain that there should have been testimony in which each of the ornamental features of the Kari-Out container was compared to each of the ornamental features of the '689 patent, as construed by the district court's claim construction. (Kari-Out br. at p.17.) Highlighting what differences there may be between the patented design and the accused article is tantamount to the now rejected point of novelty perspective. A claim of design patent infringement is evaluated on the basis of the ornamental aspects of the design as a whole, and not isolated elements of the patented design. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1306-07 (Fed. Cir. 2010); *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F. 3d 1365, 1372 (Fed. Cir. 2006); *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 (Fed. Cir. 1992).

Simply because there may be differences between the patented design and the infringing article is an insufficient challenge as a matter of law. An infringer does not escape liability because of minor changes. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1118 (Fed. Cir. 1998). The express language of 35 U.S.C. §289 includes infringement

18

by colorable imitations.  It was for the jury to determine what significance, if any, was to be given to any elements of the Kari-Out container that might have been different.

The Kari-Out defendants also argue that because they were awarded a patent for their infringing container that such a factor is relevant and entitled to "due weight." (Kari-Out br. at pp. 16-17.)  The legal principal may be correct but its application is misplaced.

As the authority cited by the Kari-Out defendants makes plain, the grant of a separate patent "does not automatically avoid infringement." *National Pesto Industries, Inc. v. West Bend Company*, 76 F.3d 1185, 1191 (Fed. Cir.1996). That, in fact, was part of the charge to the jury.  (A1017.) Secondly, the question of what level of consideration should be given is an argument that goes to the weight of the evidence which consideration was made by the jury.

Simply put, the jury based its verdict on competent and admissible evidence sufficient to show that W.Y. was the owner of a design patent for a rectangular container and the Kari-Out defendants, manufactured, advertised and sold containers that were nearly identical to the design patent.

## POINT III

## UNDER THE CIRCUMSTANCES OF THE CASE, THE PROTOCOL FOR ESTABLISHING A REASONABLE ROYALTY WAS FAITHFULLY FOLLOWED

The Kari-Out defendants[2] challenge the award of a reasonable royalty of .003 cents per container to W.Y. on the ground that there was insufficient evidence for the jury to make a determination and ask that the damage claim be dismissed in its entirety and, in effect, that no damages be awarded. (Kari-Out br. at p. 18.)   Neither argument warrants upsetting the final judgment.

"An award of damages by a jury is upheld on appellate review unless it is clearly not supported by evidence, grossly excessive, or based only on speculation and guesswork." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1376 (Fed. Cir. 2001).

In support of its claim for reasonable royalties as damages, W.Y. presented its expert Joseph Nelson.   Mr. Nelson testified that he examined each of the 15 non-exclusive factors in *Georgia-Pacific v. Plywood Corp.*, 318 F. Supp. 116 (S.D.N.Y. 1970) that form the framework for a reasonable royalty.

---

[2] Although W.Y. submits that only Kari-Out has correctly appealed, the arguments below are directed collectively to the Kari-Out defendants.

## A.    The Analysis Under The *Georgia-Pacific* Factors

Nelson explained the effect of each of the factors as they might apply to this case.

Factor 1 concerns royalties that may have been received by W.Y. Because W.Y. did not license its patents this factor was considered neutral in the analysis. (A899.)

Factor 2 is directed to, in this case, whether the Kari-Out defendants entered into any license agreements and the royalty that may have been paid. Because they had no license agreements, this factor was given a neutral label. (A899.)

Factor 3 addresses whether in the hypothetical negotiations, the license would be exclusive or nonexclusive.  Here, where the parties are competitors, Nelson believed a license would be nonexclusive and this would therefore favor the Kari-Out defendants. (A903.)

Factor 4 looks to whether W.Y. had a policy of licensing its patents. Based on the evidence, Nelson concluded that W.Y. does not license and therefore this factor is favorable to W.Y. (A903-04.)

Factor 5 examines the commercial relationship between the negotiating parties.  As the parties are direct competitors, according to Nelson, this favors W.Y. (A904.)

Factor 6 speaks to whether the licensing will likely lead to the sale of other products, *i.e.*, convoyed sales. Because the product is relatively inexpensive it would not necessarily lead to other sales and Nelson considered this a neutral factor. (A904.)

Factor 7 takes into consideration the remaining duration of the term of the patent at the time of negotiations. Nelson determined that because the patent had nine years remaining, this favored W.Y. (A905.)

Under factor 8 Nelson evaluated the commercial success of the patent to be licensed. Although this is a low cost item, because the product has been given away to customers at no cost, when other products of the Kari-Out defendants are purchased, Nelson considered it a commercial success. Nonetheless this was treated as a neutral factor favoring neither side. (A 905.)

Factors 9 and 10 were considered together and relate to the advantages of the patented product and the alternatives that exist in the marketplace. Nelson concluded that in light of the numerous noninfringing alternatives, this factor likely favored the Kari-Out defendants. (A905-06.)

Factor 11 concerns the use of the invention by the infringer. Here, as supported by the evidence, literally millions of infringing containers were manufactured, sold and, in many instances, given away by the Kari-Out

22

defendants. Accordingly, Nelson considered this factor favorable to W.Y. (A906.)

Factor 12 looks to analyze what may be customary payment in a comparable business for the same or analogous invention. Stated differently, what do other companies pay or receive for a comparable product.

To this end, Nelson conducted a search of two well respected databases he regularly relies on for industries and products similar to patented item: kt.mine and Royalty Source. (A921-22.)

That initial search yielded 250 potential items. Those 250 agreements were reviewed and pared down to 28 which were believed to most closely parallel this case. (A938-39.) The group of 28 was further refined to determine which were most applicable. (A920.) Nelson ultimately came up with the six most probative agreements available to him which were used as the starting point for determining a reasonable royalty. (A 936-37.) This served as a baseline for a reasonable royalty. (A 939.)

Among the criteria used for narrowing the search were finding agreements that were dated near the first potential infringement; including only those negotiated outside of litigation; and whether product subject to license was in the same industry. (A939.)

Nelson ultimately determined that the range of royalties for the six most comparable items was between two and eight percent of sales. (A941.)

Factor 13 relates to the portion of the profit that may be associated with the invention. Nelson concluded that this is a neutral factor in negotiations as it is a low cost item.

The focus on Factor 14 is the view of experts. Even though the Kari-Out defendants did not present expert testimony, Nelson designated this as neutral factor. (A908.)

Factor 15 concerns what is the royalty a licensor and licensee would arrive at if they had actually been negotiating. (A908.) Based on the various factors, Nelson arrived a royalty of .003 cents per container, which is about two percent of the sales price. (A895; A910.)

## B.    Adjustments Based On The Factors

Nelson concluded that one agreement had the most attributes which correlated to the case. (A915.) That agreement called for a license fee of two percent of sales -- the lowest percentage applied to any of the best six comparable agreements (factor 12) he was able to locate. (A937.)

Nelson further explained that the application of straight percentage of sales did not provide an adequate consideration to W.Y. because the Kari-Out defendants distributed containers free of charge to customers. (A909.)

If he conducted only a percentage of sales calculation, then W.Y. would not be compensated for all the infringing containers. Thus, it was necessary for Nelson to take his analysis an additional step by determining the average price of a container sold by the Kari-Out defendants. He did this by multiplying the total number of containers sold by two percent and arrived at 3/10ths of penny per container as the per unit royalty. (A910.) From that number, Nelson was able to arrive at a total royalty payment by multiplying the per container amount by the total number of containers, regardless of whether they were sold or given away. (A596.)

An argument of the Kari-Out defendants on the reasonable royalty is that there is no link tying the license on which the reasonable royalty is based and the patent.

Because W.Y. does not license and no license for nearly identical containers could be found, Nelson reasonably relied on a database identifying other products.

The Kari-Out defendants point to a trilogy of cases: *Unilock v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Resqnet Com. Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010); and *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). A review of the rule of law

in those cases does not adversely affect W.Y.  If anything, the reasonable royalty awarded appears to fit the framework cast by this Court.

Beginning with *Lucent*, there, while Lucent sought damages of a reasonable royalty based on percentage of sales, the jury awarded a lump sum payment as urged by the defendant, but in an amount more than 60 fold of the amount suggested. *Lucent*, 580 F.3d at 1323.  Arguing that the lump sum amount should be upheld, Lucent maintained that various license agreements offered in support of the percentage of sales reasonable royalty (*Georgia-Pacific* factor 1) was competent proof to sustain the jury's verdict. This Court concluded otherwise pointing out, among other things, that there was insufficient evidence of how a running royalty agreement is probative of a lump sum payment. *Id.* at 1327.

In *Resqnet,* the plaintiff used licenses under *Georgia-Pacific* factor 1 with no relationship to the invention to drive up. the royalty rate to unjustified double digits.  *Resqnet*, 593 F.3d at 870.

Lastly, in *Unilock*, in addition to rejecting the "25 percent rule of thumb," the Court reiterated the reasonable royalty verdict was not sustainable when license agreements under *Georgia-Pacific* factor 1 are not commensurate with what the defendant appropriated especially where the

use of such licenses could <u>improperly inflate</u> the reasonable royalty analysis. *Unilock*, 632 F.3d at 1316.

In contrast to those cases, W.Y.'s expert did not have available to him license agreements by any of the parties as they never licensed. Instead, the expert turned to the best comparable license agreements of others and for other products available to him. And from those he found that the range of running royalty was between two and eight percent. The expert then utilized the lowest percentage, two percent of sales, modified to include the give away of containers by the Kari-Out defendants.

The Kari-Out defendants fault W.Y. because the six items Nelson utilized in factor 12 are based on items "sold not manufactured, lump sum payments or more complicated transactions." (Kari-Out br. at p. 20.) As Nelson testified "[Y]ou have to apply some common sense …. [Y]ou're never going to be able to find a one hundred percent absolutely comparable situation that's out there in a license agreement." (A938; A940.) Extending the view of the Kari-Out defendants to an extreme, unless there is some third party agreement "on all fours," a successful patentee cannot recover a reasonable royalty.

Certainly, if the Kari-Out defendants genuinely believed that there were other agreements that would better serve as a base for the hypothetical

negotiations, then they could have challenged Nelson with them or presented the alternatives to the jury by way of their own expert. They did not, however.

Another fault directed at Nelson was that he based his calculations on a per piece royalty while the comparable agreements did not. As explained by Nelson, his protocol was necessary because of the give away of containers by the Kari-Out defendants. W.Y. should not be penalized because the commercial conduct of the Kari-Out defendants called for a modification of the reasonable royalty analyses.

The Kari-Out defendants contend that as part of his analysis, Nelson advocated an "undisclosed rule of thumb." (Kari-Out br. at pp. 11 and 21.) A fair reading of the testimony belies such notion. Testifying about his starting point, Nelson noted that there are rules of thumb which are difficult to apply in most cases. Nelson went on to caution "you pretty much have to ignore those" and he instead sought to use the most comparable agreements in the marketplace available. (A908.)

On another front, the Kari-Out defendants take issue with W. Y. because none of the alleged agreements used by Nelson to arrive at his percentage baseline were authenticated and were not entered into evidence. (Kari-Out br. at p. 21.) This argument rings hollow.

The plain language of Rule of Evidence 703 addresses that point.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Nelson properly relied on the documents and the Kari-Out defendants never came forward to challenge that such reliance is not accepted in the industry.

## C. While Criticizing The Approach Of W.Y., The Kari-Out Defendants Offered No Alternative Analysis Of A Reasonable Royalty

On the one hand, the Kari-Out defendants ask that the Court dismiss the approach of W.Y.'s expert; on the other hand, the Kari-Out defendants offered no alternative approach to a reasonable royalty.

If the approach to a reasonable royalty advanced by Nelson was not "reasonable" under the circumstances, as the Kari-Out defendants urge, then they could have argued an alternative to the jury. That reasonable alternative, if it exists, was not offered by the Kari-Out defendants. *See e.g. Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1323 (Fed. Cir.

29

2009)(plaintiff's theory of reasonable royalty damages was based on percentage of sales revenue for the accused product, *i.e.* $561.9 million; defendant's alternative was a lump sum payment of $6.5 million).

While it is W.Y.'s burden to prove its damages, at the same time under patent law, where patent infringement is shown, W.Y., is entitled to at least a reasonable royalty -- "the floor below which damages shall not fall." *Bandag, Inc. v. Gerard Tire Co.*, 704 F.2d 1578, 1583 (Fed. Cir. 1983). This is what sets patent damages apart from many other torts.

The Kari-Out defendants did not offer their own expert; they did not come forward with any evidence of comparable license agreements contradicting or undermining the survey of materials located by Nelson. They merely argue that what Nelson presented is not sustainable. This only begs the question: What is?

**D.    Should This Court Conclude That The Reasonable Royalty Was Not Properly Assessed, Remand And Not Dismissal Of The Damage Claim Is Appropriate**

Contrary to the arguments of the Kari-Out defendants, should this Court determine that the formula and evidence submitted at trial does not support the award in the final judgment, the case should not be dismissed for failure to prove damages. Where there is a finding of infringement, as a

matter of law, W.Y. is to be awarded at least a reasonable royalty.  35 U.S.C. §284.

"The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chemical Co. v. MEE Industries¸* 341 F.3d 1370, 1381 (Fed. Cir. 2003).

Significantly, the Kari-Out defendants offer no authority for the proposition that W.Y. should receive no damages, where there is finding of infringement.   Accordingly, should the award of damages by the jury be found not to be legally sufficient, the matter should be remanded to the district court so that a reasonable royalty can be awarded.

## POINT IV

### THE DISTRICT COURT CORRECTLY FOUND THAT W.Y. HAD DEMONSTRATED THE REQUIREMENTS ENTITLING IT TO INJUNCTIVE RELIEF

As a result of W.Y.'s motion to amend the judgment, the district court enjoined the Kari-Out defendants for the life of the suit patent from manufacturing, offering for sale and selling the containers found to be infringing. (A2-3.) Notwithstanding their failure to file an amended notice of appeal, the Kari-Out defendants urge this Court to vacate the injunction and therefore allow the Kari-Out defendants to resume the manufacturing and sale of infringing containers as if there had been no finding of infringement.

The Kari-Out defendants contend that W.Y. did not offer proof of irreparable injury as there was no showing of a nexus between harm and infringement. (Kari-Out br. at pp. 22-25.) Contrary to the argument of the Kari-Out defendants, the district court did not "specifically found" that W.Y. offered no evidence at all that its patented design had any effect on sales of its patented container.

As demonstrated at the trial, and as accepted by the district court, in addition to other factors, W.Y. established that its unique design is a basis for the infringing sales by the Kari-Out defendants.

## A.    The Irreparable Injury To W.Y.

The evidence at trial and post-trial submissions provided the district court with a basis to conclude that W.Y. would be irreparably harmed.

### 1.    The elephant in the room

Before the district court and now before this Court the Kari-Out defendants ignore the proverbial elephant in the room with regard to irreparable injury: They will only stop infringing if they are ordered to by a court.

Immediately following the jury verdict of infringement of the '689 patent and up to the entry of the injunction, the Kari-Out defendants continued to manufacture and sell the infringing container.  At no time have the Kari-Out defendants ever denied the post verdict sales.

Following the jury verdict, counsel for W.Y. wrote to counsel for Kari-Out

> As a result of the jury verdict finding the Kari-Out defendants have infringed the '689 patent, W.Y. hereby demands that the Kari-Out defendants immediately cease manufacturing, selling or advertising for sale any of the container styles that infringe the '689 patent to the extent that they have not already done so.
>
> In the event that any such containers are found to have been manufactured, sold or offered for sale following the jury's verdict, W.Y. shall interpret that as willful infringement and shall seek appropriate relief from the court.

33

(A625.)

In response the Kari-Out defendants took issue that its conduct of infringement in the days following the verdict "could support a finding of willful infringement." Stated differently, the Kari-Out defendants intended to continue with the conduct a jury found unlawful.

Kari-Out continued to advertise and offer for sale on the internet the infringing containers up through entry of the injunction. (A629-74.) (See printout dates at foot of document.)

The Kari-Out defendants now urge this Court to interpret *eBay v. MercExchange, LLC*, 547 U.S. 388 (2006) to be read to eliminate the significance of a finding by the jury that a valid patent is infringed. It simply "does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch LLC v. Pylon Manufacturing, Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). The right to exclude should not be ignored following a jury finding of infringement especially where the Kari-Out defendants abandoned claims that the patent is invalid. *Id.* It is one of several factors to be considered and weighed on a case by case basis.

Rather than "respect" the W.Y patent as the president of the Kari-Out defendants testified he sought to do, Kari-Out disrespected the property rights of W.Y. (A991.) Such a violation gives rise to irreparable injury.

The "entire purpose of an injunction is to take away defendant's discretion not to obey the law." *Smith & Nephew, Inc. v. Synthes (U.S.A.),* 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006). That principal was followed by the district court.

## 2.    W.Y. and the Kari-Out defendants are competitors

The Kari-Out defendants are a direct competitor of W.Y. This will give rise to a competitive injury which is not readily quantifiable and remediable by monetary damages.

As this Court recently observed: "Where two companies are in competition against one another, the patentee suffers the harm – often irreparable – of being forced to compete against products that incorporate and infringe its own patented products." *Douglas Dynamics v. Buyers Products Co.*, 2013 WL 2158423, *6 (Fed. Cir. May 21, 2013). Where the plaintiff and the defendant are direct competitors in the same market, courts are likely to grant an injunction. *i4i Ltd. P'ship. v. Microsoft Corp.*, 598 F. 3d 831, 861 (Fed. Cir. 2010).

Following the 2008 introduction of the infringing containers by the Kari-Out defendants, W.Y.'s sales of its rectangular container declined. (A847.) This is competent evidence. *Bosch*, 659 F.3d at 1154 ("While the party seeking an injunction bears the burden of showing lost market share, this showing need not be made by direct evidence.")

In arguing against the injunction before the district court, the Kari-Out defendants maintained that there are multiple competitors and that diminishes the need for a permanent injunction. The presence of additional competitors without more, however, does not weigh against irreparable harm. *Bosch*, 659 F.3d at 1151.

The Kari-Out defendants argue that specific lost sales should be identified. The twist here is that the Kari-Out defendants supplied containers to its customers for free and kept no record of which customers received the "free" containers, making the exercise urged by the Kari-Out defendants, virtually futile.

**3.    The marketing strategy of Kari-Out to give away containers with the purchase of other Kari-Out products allows the Kari-Out defendants to profit without sales of containers**

A sales practice of the Kari-Out defendants was to "give away" the infringing containers if a customer purchased other Kari-Out goods. (A540-95.)   That sales practice makes it particularly difficult to quantify and remedy W.Y.'s injury based on the Kari-Out defendants' ill-gotten gains from the infringement.   By these giveaways, the Kari-Out defendants enhanced their good will at the cost of W.Y.   This fact, further establishes irreparable injury.  Cf., *Reebock Int'l. Ltd. v. J. Baker, Inc.*, 32 F. 3d 1552, 1557 (Fed. Cir. 1994) (recognizing that "future infringement . . . may have market effects never fully compensable in money").

**4.    The nexus between the irreparable harm and infringement**

The Kari-Out defendants contend that the W.Y. design patent does not drive the demand for W.Y.'s container and therefore no irreparable injury has been shown.

In all of their fervor, the Kari-Out defendants chose to ignore the obvious concerning the W.Y. design:   First this is a straightforward infringement of a single design patent and not a sophisticated electronic device with several design and utility patents at issue in a single device. While rectangular shape containers have been in the marketplace, the design

adopted by W.Y. is unique. To begin with it deliberately departs from the conventional design of other rectangular containers insofar as the W.Y. design was inspired to follow the W.Y. round containers created in the 1990s. That is to say the design of the ends has rounded corners rather than something closer to 90 degree angles found on many containers. (See A827-28; A837-38; A871.)

This unique design is further underscored by Sterling Anthony, one of W.Y.'s experts at trial. He opined, based on his decades of experience in the industry, and after reviewing the thousands of pages of purported prior art (including that identified by the Kari-Out defendants), that the W.Y. design was unlike any other design for containers. (A883-85.) The Kari-Out defendants have never rebutted this.

The Kari-Out defendants place heavy reliance on *Apple Inc. v. Samsung Electronics, Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012). The setting of W.Y. is distinguishable from *Apple* on several fronts.

This Court affirmed denial of a preliminary injunction sought by Apple concerning a group of smart phones and tablets. In *Apple*, the injunctive relief was denied based on several factors, not germane to W.Y. For example, the application to the district court was a preliminary injunction; the court concluded that Apple had not made a sufficient

showing of likelihood of success on the merits. W.Y. has prevailed on the merits, by contrast.

The district court in *Apple* included as a factor denying relief the delay of Apple in seeking a preliminary injunction. *Id.,* at 1325-26. That is not a concern here.

Another noteworthy point, unlike the defendant in *Apple*, the Kari-Out defendants failed to come forward with countervailing evidence that the design is not a determinative factor by purchasers.

The testimony at trial from W.Y. also shows that the feedback from the customers was that they liked the look of the W.Y. container, with the ultimate endorsement: increased purchases of the W.Y. containers. (A841-42; A872.)

The fact that the look is the driving force finds support from Paul Epstein, the Kari-Out defendants' president. In 2007 when they first began to get into the business of designing and making containers, the Kari-Out defendants designed a rectangular container with more traditional sharp corners. After seeing the W.Y. container, the Kari-Out defendants designed an additional container with rounded edges copying the W.Y. design. (A952.) In other words, the smooth design with rounded corners fashioned like W.Y. was important for the rectangular container.

**B.    Inadequacy Of Money Damages**

While the Kari-Out defendants are silent on this point, competent evidence was presented to the district judge that in the context of this case, an award of money damages is inadequate.

W.Y. does not license the '689 patent or any other patents it owns. Instead, it chooses to exploit the patented design rather than receive income from others to use the patented design.

The absence of an injunction would require W.Y. to accept payment for use of its patent which is nothing more than a compulsory license imposed on W.Y. for the benefit of a direct competitor.

**C.    Balancing Of The Hardships**

While perhaps not with the same clarity as the first two factors, the district court did address the balancing of the hardships.

Nonetheless, to the extent that there may not be express findings, this Court is free to affirm a judgment on arguments advanced by the appellee which are supported in the record. *MEHL/BIOPHILE International Corp. v. Milgram*, 192 F.3d 1362, 1366 (Fed. Cir. 1999).

To be sure the Kari-Out defendants received the benefit of the court's ruling on this element.  (A1077-78.)

As part of the injunctive relief, W.Y. requested the destruction of molds that were used by the Kari-Out defendants to manufacture the infringing containers. As part of her ruling, the district judge concluded that in lieu of destroying the molds, at the urging of the Kari-Out defendants, the molds would be placed in storage and could not be used until the patent expires in 2017. The district judge went on to explain that she balanced the investment by the Kari-Out defendants in the molds versus that fact that the patent will expire in four years. (A1078.)

Another element which the district court was able to balance was the relative importance of the products to that parties' business. W.Y.'s business includes the commercial sale of the containers for profit, whereas the Kari-Out defendants' distribution of the sharply discounted or giveaway product is more of a device to generate sales of other Kari-Out products. Thus, the hardship to W.Y.'s business from the denial of an injunction would be greater than the hardship to Kari-Out from the issuance of an injunction.

So too, the infringing containers are not a large part of Kari-Out's business, which further indicates that an injunction would not harm it. (A747 ("Perk-up markets and sells more than 700 items."; A973.) See, *Mpt Inc. v. Marathon Labels*, 505 F. Supp. 2d 401 (N.D. Ohio 2007), affirmed in part, reversed in part, 258 Fed. Appx. 318 (Fed. Cir. 2007). Any hardship

to the Kari-Out defendants is lessened by the existence of non-infringing alternatives. See, *MGM Well Servs. Inc. v. Mega Lift Sys. LLC*, 505 F. Supp. 2d 359, 379 (S.D.Tex. 2007). No equity arises in favor of one who elects to build a product and trade upon that which is found to infringe. See, *Windsurfing International, Inc. v. AMF, Inc., 782 F.2d 995. 1003, (Fed. Civ. 1996).*

## D.    Public Interest

Lastly, as argued below, the public interest is served where the court is called on to protect a patent holder. See, *Abbott Labs v. Andrx Pharms. Inc.*, 452 F. 3d 1331, 1348 (Fed. Cir. 2006); *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 882 (E.D.Va. 2011). "The patent laws promote . . . progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research and development." *Abbott Labs v. Sandoz Inc.*, 544 F. 3d 1341, 1363 (Fed. Cir. 2008) (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480, (1974)).

The public is not disadvantaged by a discontinued availability of the Kari-Out defendants' infringing product, particularly where, as here, there are available non-infringing substitutes (e.g., round containers, non-infringing rectangular containers, etc.). See, *Acumed LLC v. Stryker, Inc.*,

551 F. 3d 1323, 1331 (Fed. Cir. 2008) (public interest did not bar the issuance of an injunction because non-infringing alternatives were available). The injunction would not deny anyone the ability to obtain "take out" meals, or to take home leftovers from a restaurant. There would be absolutely no disservice of any public interest.

The Kari-Out defendants are competing using a competitor's design and have done so by undercutting the price offered by W.Y. and by giving away its product resulting in a competitive injury. *Douglas Dynamics v. Buyers Products*, 2013 WL 2158423 at * 6-7.

**E.    Should This Court Conclude District Court Has Not Sufficiently Articulated The Basis For The Permanent Injunction, The Matter Should Be Remanded For Further Consideration**

In the event that this Court should determine that the permanent injunction should not stand as entered by the district court, the district judge should be permitted to supplement her findings and the injunction should remain in place pending that supplementation.

As was demonstrated before the district court, following the verdict of infringement and while the motion for a preliminary injunction was pending, the Kari-Out defendants refused to stop making, advertising and selling their infringing containers. They profited in the sale of the infringing containers without any payments to W.Y.

43

If the injunction is vacated, then the Kari-Out defendants can be expected to resume the sale of infringing containers, profit from that sale and W.Y. will be the loser after demonstrating infringement.

## CONCLUSION

For all of the reasons stated more fully above, W.Y. asks that this Court, dismiss the appeals of Perk-Up and Tripak; dismiss the appeal of Kari-Out on the issue of the permanent injunction and affirm the final judgment of the district court.

Respectfully submitted,

s/ Dennis Gleason

June 14, 2013                                    Dennis F. Gleason

JARDIM, MEISNER & SUSSER, P.C.
30B Vreeland Road, Suite 201
Florham Park, NJ 07932
(973) 845-7640

Attorneys for Appellee
W.Y. Industries, Inc.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief contains 7,646 words as measured by

the word processing software used to prepare this brief.


<u>    s/ Dennis Gleason       </u>
Dennis F. Gleason

JARDIM, MEISNER & SUSSER, P.C.
30B Vreeland Road, Suite 201
Florham Park, NJ 07932
(973) 845-7640

## CERTIFICATE OF SERVICE

I certify that on June 14, 2013, the foregoing brief was filed by way of the Court's CM/ECF system and that a copy of the brief was served by email and first class mail on Arthur M. Peslak, Esq., Gertner Mandel & Peslak, LLC, PO Box 499, Lakewood, NJ 08701.


<u>     s/ Dennis Gleason     </u>
Dennis F. Gleason

JARDIM, MEISNER & SUSSER, P.C.
30B Vreeland Road, Suite 201
Florham Park, NJ 07932
(973) 845-7640